IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CLINTON WEBB, ) | |
|     ID #415336, ) | |
|         Petitioner, ) | |
| vs. ) | No. 3:18-CV-1174-N (BH) |
| ) | |
| LORIE DAVIS, Director, ) | |
| Texas Department of Criminal ) | |
| Justice, Correctional Institutions Division, ) | |
|         Respondent. ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant filings and applicable law, the petition should be **DENIED** with prejudice.

**I.  BACKGROUND**

Clinton Webb (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondent is Lorie Davis, Director of TDCJ-CID. Petitioner challenges his convictions and life sentences for aggravated robbery in Cause No. F85–98670, and for murder in Cause No. F85-98318, in Criminal District Court No. 1 of Dallas County, Texas.  The offenses occurred on the same day, and the same person was the victim in both cases.  Petitioner was tried separately for each offense.

**A.     Aggravated Robbery Case**

Petitioner was convicted of aggravated robbery in Cause No. F85-98670 on November 11,

1985, and sentenced to life imprisonment.  (*See* doc. 3 at 2-3[1]); *see* www.dallascounty.org (search for petitioner).  The judgment was reversed on appeal.  *See Webb v. State*, 763 S.W.2d 773 (Tex. Crim. App. 1989).  On August 24, 1989, he was again convicted and sentenced to life imprisonment. *See* www.dallascounty.org (search for petitioner).  The judgment was affirmed on appeal.  *See Webb v. State*, 840 S.W.2d 543 (Tex. App. – Dallas 1992).  He did not file a petition for discretionary review.  *See*  www.txcourts.gov (search for petitioner).

Petitioner filed a state habeas application, received in the state district court on March 21, 1988, that was denied on June 29, 1988.  *See Ex parte Webb*, WR-18,534-01 (Tex. Crim. App. June 29, 1988).  He filed a second state habeas application, received on November 5, 1991, that was denied on March 24, 1993.  *See Ex parte Webb*, WR-18,534-03 (Tex. Crim. App. Mar. 24, 1993). His third state habeas application, received in 2003, was dismissed for non-compliance with the appellate rules on August 13, 2003.  *See Ex parte Webb*, WR-18,534-06 (Tex. Crim. App. Aug. 13, 2003).  His fourth state habeas application, received on September 19, 2003, was granted and his life sentence was ordered to run concurrently with his life sentence in the murder case.  *See Ex parte Webb*, AP-74,856, 2004 WL 231334 (Tex. Crim. App. Jan. 14, 2004).  His fifth state habeas application was received on April 18, 2006, and denied on November 15, 2006.  *See Ex parte Webb*, WR-18,534-09 (Tex. Crim. App. Nov. 15, 2006).  His sixth state habeas application, received on December 9, 2010, was denied on February 15, 2012.  *See Ex parte Webb*, WR-18,534-11 (Tex. Crim. App. Feb. 15, 2012).

Petitioner subsequently filed a motion for DNA testing on July 27, 2012.  *See* www.dallascounty.org (search for petitioner).  After testing was done on two hairs found in the

---

[1]  Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

deceased victim's hand, the district found on May 2, 2014, that no DNA comparison was possible because there was no "amplifiable mitochondiral DNA" found in the hairs. *See id*. The court determined that had the DNA testing been available at trial, the result of the trial would not have changed. *See id*. The court's order was affirmed on appeal. *See Webb v. State*, Nos. 05-14-00746-CR and 05-14-00747-CR, 2015 WL 3429762 (Tex. App. – Dallas Jan. 30, 2015) (holding that Petitioner did not request testing of the firearm and bullet, and that he did not show that he was entitled to testing of those items). Petitioner did not file a petition for discretionary review.

Petitioner filed his seventh state habeas application on September 7, 2017, and on February 7, 2018, it was dismissed as a subsequent application under Texas Code of Criminal Procedure article 11.07, § 4. *See Ex parte Webb*, WR-18,534-12 (Tex. Crim. App. Feb. 7, 2018).

**B.      Murder Case**

Petitioner was convicted of murder in Cause No. F85-98318 on January 30, 1986, and he was sentenced to life imprisonment. (*See* doc. 3 at 2-3); *see* www.dallascounty.org (search for petitioner). The judgment was affirmed on appeal. *See Webb v. State*, No. 05-86-00104-CR (Tex. App. – Dallas Nov. 7, 1986). He did not file a petition for discretionary review. *See* www.txcourts.gov (search for petitioner).

Petitioner filed a state habeas application, received in the state district court on March 21, 1988, that was denied on June 29, 1988. *See Ex parte Webb*, WR-18,534-01 (Tex. Crim. App. June 29, 1988). He filed a second state habeas application, received on June 5, 1990, that was denied on November 21, 1990. *See Ex parte Webb*, WR-18,534-02 (Tex. Crim. App. Nov. 21, 1990). His third state habeas application, received on November 5, 1991, was denied on March 24, 1993. *See Ex parte Webb*, WR-18,534-03 (Tex. Crim. App. Mar. 24, 1993).

Petitioner filed the same motion for DNA testing in the murder case, which was considered with the DNA motion in the aggravated robbery case, with the same results. *See* www.dallascounty.org (search for petitioner); *Webb v. State*, Nos. 05-14-00746-CR and 05-14-00747-CR, 2015 WL 3429762 (Tex. App. – Dallas Jan. 30, 2015). He filed his fourth habeas application challenging his murder conviction on September 7, 2017, and on February 7, 2018, it was dismissed as a subsequent application under Texas Code of Criminal Procedure article 11.07, § 4. *See Ex parte Webb*, WR-18,534-14 (Tex. Crim. App. Feb. 7, 2018).

**C.      Substantive Claims**

Petitioner's federal habeas petition states that it was placed in the prison mail on May 2, 2018. (*See* doc. 3 at 12.) His grounds relate to both convictions. His first four grounds claim that he was denied due process in his last state habeas cases that were dismissed as subsequent applications, Nos. WR-18,534-12 and WR-18,534-14. He also claims that he is actually innocent; that the state withheld material scientific evidence by failing to have DNA tests and other scientific tests, such as atomic absorption, done on a firearm, bullet, and hair; and that counsel was ineffective for failing to present that material scientific evidence. He also argues that the trial court should have ordered that a firearm and bullet should have been tested for DNA as a result of his motions for DNA testing. (*See* doc. 4 at 16-27.)

## II.  STATUTE OF LIMITATIONS

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies to it. Title I of the Act

substantially changed the way federal courts handle habeas corpus actions. One of the major changes is a one-year statute of limitations. See 28 U.S.C. § 2244(d)(1).

The one-year period is calculated from the latest of either:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See id. § 2244(d)(1)(A)-(D).

**A.    Trial**

The facts supporting Petitioner's claims regarding the state's withholding of evidence, ineffective assistance of counsel, and actual innocence either became known or could have become known prior to the date his judgments became final.[2] He should have been aware at the time of the trials that physical evidence had not been subjected to DNA or the other scientific testing that he asserts was not done. Because Petitioner's conviction became final prior to the 1996 enactment of the AEDPA, he had a one-year grace period, until April 24, 1997, to file his § 2254 petition for the claims relating to the trials. See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998).

---

[2] He has not alleged a state-created impediment that prevented him from filing his federal petition or any new constitutional right.

Section 2244 mandates that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be counted toward any period of limitation under this subsection*." 28 U.S.C. § 2244(d)(2) (emphasis added). He did not file any state challenges to his convictions during the one-year grace period that ended on April 24, 1997. His state habeas applications and motions for DNA testing that were filed after April 24, 1997, did not toll the limitations period because it had already expired. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (an application filed in state court after the limitations period has expired does not operate to statutorily toll the limitations period).

Petitioner filed his § 2254 petition on May 2, 2018, the date that it was mailed.[3] A literal application of § 2244(d)(1)(A) renders his claims regarding the state's failure to test physical evidence at the trials, ineffective assistance of counsel, and actual innocence untimely.

**B.    Motions for DNA Testing**

Petitioner's claims regarding the disposition of his motions for DNA testing, in which the trial court also failed to order testing of the firearm and bullet, arose when his appeal of that order ended by the expiration of the thirty-day period for filing a petition for discretionary review, after the order was affirmed on direct appeal. *See Roberts v. Cockrell*, 319 F.3d 690, 694 n.24 (5th Cir. 2003) (under Tex. R. App. P. 68.2 a party has thirty days to file a petition for discretionary review). The appellate court's opinion was issued on January 30, 2015, so the thirtieth day after that was March 1, 2015. That day was a Sunday, so the last day to file a petition for discretionary review was Monday, March 2, 2015. *See* Tex. R. App. P. 4.1. Petitioner filed his next state habeas applications

---

[3]    *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

on September 7, 2017, which was after the limitations period had expired in March 2015, so they did not toll the limitations period. *See Scott*, 227 F.3d at 263. His claims regarding the DNA motions and failure to order testing on the firearm and bullet are therefore also untimely.

C.      **Equitable Tolling**

AEDPA's one-year statutory deadline is not a jurisdictional bar and can, in appropriate exceptional circumstances, be equitably tolled. *Holland v. Florida*, 560 U.S. 631 (2010); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998); *cf. Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000) (only "rare and exceptional circumstances" warrant equitable tolling). "The doctrine of equitable tolling preserves a [party's] claims when strict application of the statute of limitations would be inequitable." *Davis*, 158 F.3d at 810 (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995)). It "applies principally where [one party] is actively misled by the [other party] about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). A habeas petitioner is entitled to equitable tolling only if he shows that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance prevented a timely filing. *Holland*, 560 U.S. at 649, citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). He bears the burden to show entitlement to equitable tolling. *Phillips v. Donnelly*, 223 F.3d 797, 797 (5th Cir. 2000) (per curiam). Courts must examine each case in order to determine if there are sufficient exceptional circumstances that warrant equitable tolling. *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). The Fifth Circuit has also stated that when a prisoner contends that his ability to file a federal habeas petition has been affected by a state proceeding, the court should look at the facts to determine whether equitable tolling is warranted. *Coleman*, 184

7

F.3d at 402.

Petitioner contends that he is actually innocent. In *McQuiggin v. Perkins*, 569 U.S. 383, 386-91 (2013), the Supreme Court held that even where a habeas petitioner has failed to demonstrate the due diligence required to equitably toll the statute of limitations, a plea of actual innocence can overcome the AEDPA statute of limitations under the "miscarriage of justice" exception to a procedural bar. A tenable actual innocence claim must persuade a district court that, in light of the new evidence, it is more likely than not that no rational fact-finder would have found the petitioner guilty beyond a reasonable doubt in light of the new evidence. *Id*. at 386, 399. The untimeliness of a plea of actual innocence does bear on the credibility of the evidence offered. *Id*. at 399-400. "[A] credible claim [of actual innocence to excuse the untimeliness of a habeas petition] must be supported by new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Floyd v. Vannoy*, No. 17-30421, 2018 WL 1663749 at *6-7 (5th Cir. Apr. 6, 2018).

Petitioner has not presented any evidence in support of his claim of innocence, so he has not shown that the untimeliness of his federal petition should be excused. *See id*.; *Henderson v. Stephens*, 2014 WL 1600621 at *4 (S.D. Tex. Apr. 21, 2014) (untimeliness of petition not excused where petitioner did not present evidence to support his allegation of new evidence of innocence).

### III.  STATE HABEAS PROCEEDINGS

Petitioner's claim regarding the state habeas process for his last state habeas applications that challenged his convictions for aggravated robbery and murder, WR-18,534-12 and WR-18,534-14, arose when those applications were dismissed as subsequent applications on February 7, 2018. His § 2254 petition is timely as to these claims.

Federal habeas relief cannot be had "absent the allegation by a [Petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). The courts entertain federal petitions under § 2254 "only on the ground" that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a). Courts cannot grant habeas corpus relief to correct alleged errors in state habeas proceedings. *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (holding that habeas relief was not available for such alleged errors); *see also Morris v. Cain*, 186 F.3d 581, 585 n. 6 (5th Cir. 1999) ("errors in state postconviction proceedings will not, in and of themselves, entitle a Petitioner to federal habeas relief"); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ( "infirmities in state habeas [and other post-conviction] proceedings do not constitute grounds for relief in federal court"). Because he complains of error in the state proceedings, Petitioner has not shown that he is entitled to relief on this claim.

## IV. RECOMMENDATION

This petition for writ of habeas corpus should be **DENIED** with prejudice.

**SIGNED on this 11th day of June, 2018.**

                                                    IRMA CARRILLO RAMIREZ
                                                    UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

  A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE